AO 106 (Rev. 04/10) Application for a Search Warrant

AUTHORIZED AND APPROVED/DATE: ___ EMJ 4/29/2024

# UNITED STATES DISTRICT COURT

for the

Western District of Oklahoma

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched* | ) |
| *or identify the person by name and address)* | )    Case No. MJ-24--389-STE |
| 2421 NW 111th Street, Oklahoma City, Oklahoma 73120 WITH | ) |
| ACCESS AND CONTROL OF ALL OUTBUILDINGS, ATTACHED | ) |
| GARGES, CURTILAGE, AND VEHICLES | ) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A, which is incorporated by reference herein.

located in the _____ Western _____ District of _____ Oklahoma _____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B, which is incorporated by reference herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. s. 2252A(a)(5)(B) | Possession of Materials Containing Child Pornography |

The application is based on these facts:

See Affidavit of SA Kyle Itkin, HSI, which is attached and incorporated by reference herein.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 USC § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Kyle Itkin, Special Agent, HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: **Apr 29, 2024**

_____
*Judge's signature*

City and state: Oklahoma City, Oklahoma

U.S. MAGISTRATE JUDGE SHON T. ERWIN
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR SEARCH WARRANT

I, Kyle Itkin, a Special Agent with Homeland Security Investigations ("HSI"), being duly sworn, depose and state as follows:

## INTRODUCTION

1.  I am currently employed as a Special Agent ("SA") with HSI and have been since November of 2022.  I have attended the Criminal Investigator Training Program and the HSI Special Agent Training program at the Federal Law Enforcement Training Center in Brunswick, Georgia.  Formerly, I was a Uniformed Division Officer of the United States Secret Service for approximately four and a half years.  Training for this position required attending the Uniformed Police Training Program at the Federal Law Enforcement Training Center in Brunswick, Georgia and the Uniformed Division Training Course in Beltsville, Maryland.  I hold a Bachelor of Science in Criminology from George Mason University and double minors in Intelligence Analysis and Information Technology.

2.  I am currently assigned to the HSI Oklahoma City, Oklahoma office. As part of my duties, I am tasked with investigating federal criminal cybercrime violations.  I have training and experience conducting child exploitation and child pornography investigations.  I have access to the institutional knowledge developed around this type of investigation by working with other experienced child exploitation criminal investigators.  I am aware of numerous examples of child pornography (as defined in 18 U.S.C. § 2256) in all forms of

1

media and violations of Federal law regarding child pornography (as defined in 18 U.S.C. §§ 2252 and 2252A).

## PURPOSE OF AFFIDAVIT

3.  This Affidavit is submitted in support of an application for a search warrant for the location specifically described in Attachment A of this Affidavit: the residence located at 2421 NW 111TH ST, OKLAHOMA CITY, OKLAHOMA 73120 (hereinafter referred to as the "**SUBJECT PREMISES**") for property that constitutes evidence of the commission of a criminal offense; contraband, the fruits of crime, and things otherwise criminally possessed; and property designed and intended for use, and which has been used as a means of committing criminal offenses, namely, violations of 18 U.S.C. §§ 2252 and 2252A (Possession and distribution of child pornography). These items are more specifically described in Attachment B of this Affidavit.

4.  Facts set forth in this Affidavit are based upon my personal observations, training, prior investigations, and, where noted, information relayed to me by other law enforcement officers. Since this Affidavit is being submitted for the limited purpose of establishing probable cause to secure a search warrant, I have not included every fact known to me concerning this investigation.

## STATUTORY AUTHORITY

5.  This investigation concerns alleged violations of 18 U.S.C. § 2252A, relating to material involving the sexual exploitation of minors.

6.  It is a violation of 18 U.S.C. § 2252A(a)(2)(A) for any person to knowingly receive or distribute any child pornography by using any means or facility of interstate or foreign

commerce, or that has been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer.

## DEFINITIONS

7. The following definitions apply to this Affidavit and Attachment B:

8. "Child pornography," as defined in 18 U.S.C. § 2256(8), is any visual depiction of sexually explicit conduct where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct, (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct, or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct.

9. "Computer," as used herein, refers to "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device" and includes smartphones, and mobile phones and devices. *See* 18 U.S.C. § 1030(e)(1).

10. "Computer hardware," as used herein, consists of all equipment that can receive, capture, collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, or similar computer impulses or data. Computer hardware includes any data-processing devices (including central processing units, internal and peripheral storage devices such as fixed disks, external hard drives, floppy disk drives and diskettes, and other memory storage devices); peripheral input/output devices (including keyboards, printers, video display monitors, and related communications devices such as cables and connections); as

3

well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (including physical keys and locks).

11. "Computer passwords and data security devices," as used herein, consist of information or items designed to restrict access to or hide computer software, documentation, or data. Data security devices may consist of hardware, software, or other programming code. A password (a string of alpha-numeric characters) usually operates what might be termed a digital key to "unlock" particular data security devices. Data security hardware may include encryption devices, chips, and circuit boards. Data security software of digital code may include programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touched. Data security software or code may also encrypt, compress, hide, or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the process to restore it.

12. "Computer software" is digital information that can be interpreted by a computer and any of its related components to direct the way it works. Computer software is stored in electronic, magnetic, or other digital form. It commonly includes programs to run operating systems, applications, and utilities.

13. "Internet Protocol address" or "IP address," as used herein, refers to a unique number used by a computer or other digital device to access the Internet. IP addresses can be "dynamic," meaning that the ISP assigns a different unique number to a computer every time it accesses

4

the Internet. IP addresses might also be "static," if an ISP assigns a user's computer a particular IP address that is used each time the computer accesses the Internet.

14. "Internet Service Providers" (ISPs), as used herein, are commercial organizations that are in business to provide individuals and businesses access to the Internet. ISPs provide a range of functions for their customers including access to the Internet, web hosting, email, remote storage, and co-location of computers and other communications equipment.

15. "Minor," as defined in 18 U.S.C. § 2256(1), refers to any person under the age of eighteen years.

16. "Records," "documents," and "materials," include all information recorded in any form, visual or aural, and by any means, whether in handmade form (including, but not limited to, writings, drawings, painting), photographic form (including, but not limited to, microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, photocopies); mechanical form (including, but not limited to, phonograph records, printing, typing); or electrical, electronic or magnetic form (including, but not limited to, tape recordings, cassettes, compact discs, electronic or magnetic storage devices such as floppy diskettes, hard disks, CD-ROMs, digital video disks (DVDs), Multi Media Cards (MMCs), memory sticks, optical disks, printer buffers, smart cards, memory calculators, electronic dialers, Bernoulli drives, or electronic notebooks, as well as digital data files and printouts or readouts from any magnetic, electrical or electronic storage device).

17. "Sexually explicit conduct," as defined in 18 U.S.C. § 2256(2), means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, anal- genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d)

sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic area of any person.

18. "Visual depiction," as defined in 18 U.S.C. § 2256(5), includes undeveloped film and videotape, data stored on computer disc or other electronic means which is capable of conversion into a visual image, and data which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format.

## CYBERTIPLINE REPORTS

19. The National Center for Missing and Exploited Children ("NCMEC") is an organization that, among other things, tracks missing and exploited children and serves as a repository for information about child pornography. Federal law requires NCMEC to operate the CyberTipline and requires Electronic Service Providers ("ESP"s) to report apparent instances of child pornography offenses. Providers also have the discretion to submit reports concerning planned or imminent child pornography offenses. Companies that suspect child pornography has been stored or transmitted on their systems report that information to NCMEC in a CyberTipline Report (or "CyberTip"). The ESP submits the report and uploads content to NCMEC via a secure connection. Aside from required information such as incident type, date, and time, reporters can also fill in voluntary reporting fields such as user or account information, IP addresses, or information regarding the uploaded content itself, as well as other information it may have collected in connection with the suspected criminal activity. The ESP may or may not independently view the content of the file(s) it uploads. Using publicly available search tools, NCMEC then attempts to locate where the activity occurred based on the information the ESP submits, such as IP addresses. NCMEC then packages the information from the ESP along with any

additional information it has, such as previous related CyberTips, and sends it to law enforcement in the jurisdiction where the activity is believed to have occurred.

## BACKGROUND ON GOOGLE LLC AND GOOGLE DRIVE

20. Google LLC is an American multinational corporation and technology company focusing on online advertising, search engine technology, cloud computing, computer software, quantum computing, e-commerce, consumer electronics, and artificial intelligence ("AI"). Google also offers a large portfolio of products and services, including Google Drive. Google Drive is a cloud-based storage service that enables users to store and access files online. The service syncs stored documents, photos, and videos across all the user's mobile devices, computers, and tablets. Google Drive's main competitors include Apple iCloud, Dropbox, and Microsoft OneDrive.

## PROBABLE CAUSE

21. On March 31, 2023 at approximately 8:01:47 PM CST Google, an ESP became aware of a user, thompsonroger303@gmail.com, uploading images of child pornography to Google Drive. The images were identified by Google by a file hash match, based on previously reported images of child pornography or a Google employee reviewing the file. Hashing is the process of converting data, in this case images or videos, into a fixed-length string of numbers. It is accomplished by using a complex mathematical function to output a fixed value. The file hashes that NCMEC utilizes to compare images is the MD5 (Message-Digest 5) algorithm. MD5 generates a 32-character string of text that is unique to each file. Hashes cannot be reversed, so possessing the hash value alone will not allow you to reconstruct the contents of the file. However, it can be used to determine whether two files are identical or not. In law enforcement, this is useful because it allows an investigator

7

with a known dataset of hashes from prior discovered images of child pornography, to compare to newly discovered files in child pornography investigations. An investigator will then know if the file contains child pornography.

22. Documented in CyberTipline Report 159655909, Google provided an upload IP Address of 2600:1700:9575:1860:a8c2:92b4:9d15:5c4c, an account name of Roger THOMPSON[1], and a contact phone of (405) 365-7580. Additional instances of files meeting the federal definition of child pornography being uploaded from the same Google account occurred on April 1, 2023 and April 7 of 2023, and these instances are documented in CyberTipline reports 159694795 and 159904695, respectively. In total, three separate CyberTipline reports indicated that files containing child pornography were uploaded by Google account user thompsonroger303@gmail.com.

23. On April 12, 2023, Inspector Stephanie Alfred with the Oklahoma City Police Department ("OCPD") submitted a preservation letter to Google for the Google account associated with the username "thompsonroger303@gmail.com." On April 26, 2023, Inspector Alfred submitted a signed state search warrant from the District Court of Oklahoma County to Google for the contents of the Google account associated with the username

_____

[1] Roger Thompson is believed to be the same individual as Rogers Leon Thompson, Jr., through investigative methods and database checks. Specifically, law enforcement's review of DMV records reflects Rogers Leon Thompson's address is the **SUBJECT PREMISES** and his driver's license features an image of the individual law enforcement has observed at the **SUBJECT PREMISES** during surveillance. Furthermore, law enforcement's review of LinkedIn profiles has revealed a profile under the name Roger Thompson that features an image of the same individual. Additionally, he shares the name Rogers Leon Thompson with his father and son.

thompsonroger303@gmail.com. On May 8, 2023, Google provided the content, which was reviewed by Inspector Alfred.

24. On April 26, 2023, Inspector Alfred submitted a signed court order from the District Court of Oklahoma County to AT&T for the subscriber information associated with the IP Address 2600:1700:9575:1860:a8c2:92b4:9d15:5c4c, which is the IP Address identified in the NCMEC CyberTipline reports. On May 1, 2023, AT&T responded with subscriber information for the requested IP address. According to AT&T records, the IP address was assigned to an active account (Account No. 319124622) belonging to Roger THOMPSON at the **SUBJECT PREMISES**.

25. On April 26, 2023, Inspector Alfred submitted a signed state search warrant from the District Court of Oklahoma County to AT&T for the subscriber information and location data associated with phone number (405) 365-7580, which is the phone number identified in the NCMEC CyberTipline reports. On May 02, 2023, AT&T responded with subscriber information and call logs. According to AT&T records, the phone number is assigned to an active account (Account No. 484089214) belonging to Roger THOMPSON at the **SUBJECT PREMISES**.

26. On January 9, 2024, Homeland Security Investigations ("HSI") Oklahoma City was referred this case from OCPD. I met with Inspector Alfred at the OCPD investigative office located in Oklahoma City, Oklahoma. Inspector Alfred provided me with all the case files related to this investigation, including the associated NCMEC CyberTipline Reports. I was also provided with the associated legal processes that had been previously served and their corresponding returns. I reviewed the CyberTipline Reports and the content stored in the

Google account associated with the username thompsonroger303@gmail.com, which was returned from a previously signed state search warrant. The Google account's Google Drive contained numerous images and video files of child pornography.

27. Located in the Google Drive contents is an MP4 video file named "vsd_43_ev," which depicts two nude pubescent females. One female is sitting on the ground with her legs spread open, and the second female is performing oral sex on the first female. A watermark is visible in the video with the words "telegram: @cowetty628" in red writing.

28. Located in the Google Drive contents is an MP4 video file named "vsd_13_ev," which depicts a pubescent female lying on her back on a couch. An adult male wearing a condom engages in sexual intercourse with her. A watermark is visible in the video with the words "telegram: @cowetty628" in red writing.

29. Law enforcement located additional video and image files, 202 in total, in the stored contents of the preserved Google Drive. Although most are sexually explicit, not all of the files meet the federal definition of child pornography.

30. On February 14, 2024, I issued a Customs Summons to Oklahoma Gas & Electric ("OG&E") requesting the account information related to the **SUBJECT PREMISES** between March 1, 2023 through February 1, 2024. On February 27, 2024 OG&E provided utilities data for the **SUBJECT PREMISES**. The utility records list the customer as Roger THOMPSON (Account No. 3057233-3).

31. On March 18, 2024, at approximately 7:10 AM, I conducted surveillance at the **SUBJECT PREMISES**. A white Chevrolet Equinox, bearing Oklahoma license plate JSV476, was

10

parked in the driveway outside the front of the residence. Database checks show the vehicle leased to Liberty Mutual Insurance with an address matching the **SUBJECT PREMISES**. While conducting open-source research, I located an online LinkedIn profile indicating that Roger THOMPSON, in Oklahoma City, works at Liberty Mutual Insurance. Records checks indicate that THOMPSON is residing at the residence with his wife and children. THOMPSON has the residence, utilities, and phone records in his name and is the primary subject of the child pornography investigation. According to records checks, THOMPSON also has a 2010 Nissan Altima (Tag No. GEP848), which is registered to him at the **SUBJECT PREMISES**, but has not been observed during surveillance.

32. On March 21, 2024, I issued a Customs Summons to AT&T requesting the account information for the **SUBJECT PREMISES** between the time-period of March 31, 2023 through March 21, 2024. On March 29, 2024, AT&T provided account records. The owner listed on the account is Roger THOMPSON at the **SUBJECT PREMISES**.

33. Open-source and law enforcement records indicate that Rogers THOMPSON is married to Christina THOMPSON and that they may have two children. During surveillance, an individual matching the appearance of THOMPSON has been seen leaving along with a second individual, possibly his son. According to records checks, both Rogers and Christina THOMPSON are listed as owners of the residence. THOMPSON is the main

target of the investigation as he is the listed account owner of the phone number and the account owner of the IP address listed on the CyberTipline Reports.

## BACKGROUND ON COMPUTERS AND THE INTERNET

34. Computers and digital technology play a large role in the way individuals interested in child pornography interact with each other.  Computers basically serve four functions in connection with child pornography: production, storage, communication, and distribution.

35. The commonality of digital cameras and smartphones with built-in cameras has created an environment that allows those interested in, to easily produce child pornography. Resolution of these pictures and videos are sharper than ever before. When a photograph or video is taken with a digital camera or smartphone, it is saved as a digital file. Digital files can then be stored in the internal memory, or on a removable memory card in the camera, smartphone, or transferred to another computer device. These memory cards can store large amounts of data, some of which provide enough space to store tens of thousands of high-resolution photographs.

36. The computer's ability to store images in digital form makes the computer itself an ideal repository for child pornography. The size of the electronic storage media (commonly referred to as the hard drive) can store thousands of images at very high resolutions. Hard drives, either standalone or internal, that can hold multiple terabytes of information are not uncommon. In addition, there are numerous options available for the storage of digital files. Other media storage devices include CDs, DVDs, and "thumb," "jump," or "flash" drives, which are very small devices that are plugged into a port on the computer. It is extremely easy for an individual to take a photo or a video with a digital camera or camera-bearing

12

smartphone, upload that photo or video to a computer, and then copy it (or any other files on the computer) to any one of those media storage devices. CDs and DVDs are not as instantaneous though. They require software to save or "burn" files onto them. Some media storage devices, like smartphones and/or mobile phones, can easily, and are often perpetually concealed and/or carried on an individual's person.

37. A device known as a modem allows any computer to connect to another computer using telephone, cable, or wireless connection. Electronic contact can be made to millions of computers around the world. Child pornography can be transferred via email or through file transfer protocols ("FTP"s) to anyone with access to a computer and the internet. Individuals can also use online resources to retrieve and store child pornography. Online services allow a user to set up an account with a remote computing service that provides email services as well as electronic storage of computer files in a variety of formats. A user can set up an online storage account from any computer with access to the internet.

38. The internet affords individuals several venues for obtaining, viewing, and trading child pornography in a relatively secure and anonymous fashion. For example, distributors of child pornography can use membership-based/subscription-based websites to conduct business, allowing them to remain relatively anonymous. Additionally, distributors can use file sharing software or P2P software. This P2P software allows users to share files with other users running compatible software on this P2P file-sharing network.

39. As is the case with most digital technology, communications by way of computer can be saved or stored on the computer used for these purposes. Storing this information can be intentional (i.e., by saving an email as a file on the computer or saving the location of one's

favorite websites in, for example, "bookmarked" files). Digital information can also be retained unintentionally such as the traces of the path of an electronic communication may be automatically stored in many places (e.g., temporary files or internet service provider client software, among others). In addition to electronic communications, a computer user's internet activities generally leave traces or "footprints" in the web cache and history files of the browser used. Such information is often maintained indefinitely until overwritten by other data. Accordingly, a computer forensic examiner can often find evidence of deleted files on a user's computer. Thus, if a user has downloaded image files, viewed them, then deleted them, a computer forensic examiner can often find evidence of such actions and maybe even the deleted images themselves. Even in cases where online storage is used, evidence of child pornography can still be found on the user's computer or external media in most cases.

## CHILD PORNOGRAPHY COLLECTOR CHARACTERISTICS

40. Based upon my knowledge, experience, and training in child exploitation and child pornography investigations, and the training and experience of other law enforcement officers with whom I have had discussions, there are certain characteristics common to individuals involved in the receipt and collection of child pornography:

41. Child pornography collectors usually start collecting child pornography by obtaining free images and videos of child pornography widely available on the internet on various locations and then escalate their activity by proactively distributing images they have

14

collected, often for the purposes of trading images of child pornography with others, as a method of adding to their own collection of child pornography.

42. Child pornography collectors may receive sexual gratification, stimulation, and satisfaction from contact with children; or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or other visual media; or from literature describing such activity.

43. Collectors of child pornography may collect sexually explicit or suggestive materials, in a variety of media, including photographs, magazines, motion pictures, videotapes, books, slides and/or drawings or other visual media. Child pornography collectors oftentimes use these materials for their own sexual arousal and gratification. Further, they may use these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts.

44. Child pornography collectors typically retain pictures, films, photographs, negatives, magazines, correspondence, books, tape recordings, mailing lists, child erotica, and videotapes for many years. Collectors prefer not to be without their child pornography for any prolonged period of time.

45. Likewise, collectors of child pornography often maintain their collections that are in a digital or electronic format in a safe, secure, and private environment. These collections

are often maintained for several years and are kept close by, usually at the collector's residence, to enable the collector to view the collection, which is valued highly.

46. Child pornography collectors also may correspond with and/or meet others to share information and materials; rarely destroy correspondence from other child pornography distributors/collectors; conceal such correspondence as they do their sexually explicit material; and often maintain lists of names, addresses, and telephone numbers of individuals with whom they have been in contact and who share the same interests in child pornography.

**SPECIFICS OF SEARCH AND SEIZURE OF COMPUTER SYSTEMS**

47. Searches and seizures of evidence from computers commonly require agents to download or copy information from the computers and their components or seize most or all computer items (computer hardware, computer software, and computer related documentation) to be processed later by a qualified computer expert in a laboratory or other controlled environment. This is almost always true because of the following two reasons:

48. Computer storage devices (like hard disks, diskettes, tapes, laser disks, magneto optical, and others) can store the equivalent of millions of pages of information. Especially when the user wants to conceal criminal evidence, he or she often stores it in random order with deceptive file names. This requires searching authorities to examine all the stored data that is available to determine whether it is included in the warrant that authorizes the search.

16

This sorting process can take weeks or months, depending on the volume of data stored, and is generally difficult to accomplish on-site.

49. Searching computer systems for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment. The vast array of computer hardware and software available requires even computer experts to specialize in some systems and applications, so it is difficult to know before a search which expert should analyze the system and its data. The search of a computer system is an exacting scientific procedure that is designed to protect the integrity of the evidence and to recover even hidden, erased, compressed, password-protected, or encrypted files. Since computer evidence is extremely vulnerable to tampering or destruction (which may be caused by malicious code or normal activities of an operating system), the controlled environment of a laboratory is essential to its complete and accurate analysis.

50. To fully retrieve data from a computer system, the analyst needs all magnetic storage devices as well as the central processing unit ("CPU"). In cases involving child pornography where the evidence consists partly of graphics files, the monitor(s) may be essential for a thorough and efficient search due to software and hardware configuration issues. In addition, the analyst needs all the system software (operating systems or interfaces, and hardware drivers) and any applications software which may have been used to create the data (whether stored on hard drives or on external media). Finally, I know that many modern smart cell phones, including Apple iPhones and Samsung-brand phones, can be encrypted by the user using his finger and/or thumbprints or facial recognition features to lock and unlock the device. Without the user's prints or face, the devices are difficult, if not impossible, for law enforcement personnel to unlock. Accordingly, I am

17

requesting that, to the extent law enforcement seizes any smart cell phones or other computers described in Attachment B during a search of the **SUBJECT PREMISES** (described in Attachment A), and if such device(s) feature such encryption, then law enforcement may, while executing the search warrant at the **SUBJECT PREMISES**, depress the finger and/or thumb prints of THOMPSON at the **SUBJECT PREMISES** onto any such encryption feature to attempt to unlock the device or try to unlock the devices using THOMPSON's facial recognition features.

51. Furthermore, because there is probable cause to believe that the computer and its storage devices are all instrumentalities of crime(s) described in this Affidavit, they should all be seized as such.

## **CONCLUSION**

52. Based on the above information, there is probable cause to believe the items described in Attachment B are presently located within the **SUBJECT PREMISES** described in, and set forth in Attachment A. The digital media therein, and the items thereof, constitute evidence or instrumentalities of violations of 18 U.S.C. § 2252A. Accordingly, I respectfully request the Court authorize the search of the **SUBJECT PREMISES** and seize evidence and instrumentalities of the above violations of federal law and related contraband.

 

Kyle Itkin
Special Agent
Homeland Security Investigations

SUBSCRIBED AND SWORN before me this ___29th___ day of April 2024.

Shon T. Erwin

SHON T. ERWIN
United States Magistrate Judge

19

**ATTACHMENT A**
**DESCRIPTION OF PREMISES**

2421 NW 111ᵗʰ Street, Oklahoma City, Oklahoma 73120 is a single-story home with gray brick and a light-colored door. There is a two-car garage at the residence. This search will include all appurtenances, outbuildings, the attached garages, the person of Rogers Leon THOMPSON, Jr. if present, any vehicles present, and any computers and storage media found therein.

The property is as shown below:



## ATTACHMENT B
## LIST OF ITEMS TO BE SEIZED

1.      Computer(s), as broadly defined in 18 U.S.C. § 1030(e), other digital file storage devices, computer hardware, computer software, computer related documentation, computer passwords and data security devices, videotapes, video recording devices, video recording players, and video display monitors that may be, or are used to: visually depict child pornography or child erotica; display or access information pertaining to a sexual interest in child pornography; display or access information pertaining to sexual activity with children; or distribute, possess, or receive child pornography, child erotica, or information pertaining to an interest in child pornography.

2.      All computer software, including programs to run operating systems, applications (such as word processing, graphics, or spreadsheet programs), utilities, compilers, interpreters, and communications programs.

3.      All notes, documents, records, or correspondence, in any format and medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and handwritten notes) pertaining to the possession, receipt, distribution or accessing with the intent to view (or the attempt to do so) child pornography as defined in 18 U.S.C. § 2256(8), or to the possession, receipt, or distribution of visual depictions of minors engaged in sexually explicit conduct as defined in 18 U.S.C. § 2256(2).

4.      In any format and medium, all originals, computer files, copies, and negatives of child pornography, as defined in 18 U.S.C. § 2256(8), and visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2).

5.      All notes, documents, records, or correspondence, in any format or medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and handwritten notes), identifying persons transmitting, through interstate or foreign

commerce by any means, including, but not limited to, by the United States Mail or by computer, any child pornography as defined in 18 U.S.C. § 2256(8) or any visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2).

6.      All notes, documents, records, or correspondence, in any format or medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, other digital data files and web cache information) concerning the receipt, transmission, or possession of child pornography, as defined in 18 U.S.C. § 2256(8), or visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2).

7.      All notes, documents, records, or correspondence, in any format or medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and other digital data files) concerning communications between individuals about child pornography or the existence of sites on the Internet that contain child pornography or that cater to those with an interest in child pornography.

8.      All notes, documents, records, or correspondence, in any format or medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and other digital data files) concerning membership in online groups, clubs, or services that provide or make child pornography accessible to members.

9.      All records, documents, invoices and materials, in any format or medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and other digital data files) that concern online storage or other remote computer storage, including, but not limited to, software used to access such online storage or remote computer storage, user logs or archived data that show connection to such online storage or remote

computer storage, and user logins and passwords for such online storage or remote computer storage.

10.    All cameras, film, videotapes, or other photographic equipment.

11.    All visual depictions of minors engaging in sexually explicit conduct.

12.    All address books, mailing lists, supplier lists, mailing address labels, and any and all documents and records, in any format or medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and other digital data files), pertaining to the preparation, purchase, and acquisition of names or lists of names to be used in connection with the purchase, sale, trade, or transmission, through interstate or foreign commerce by any means, including by the United States Mail or by computer, any child pornography, as defined in 18 U.S.C. § 2256(8), or any visual depiction of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2).

13.    All documents, records, or correspondence, in any format or medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and other digital data files), pertaining to occupancy or ownership of the premises described above, including, but not limited to, rental or lease agreements, mortgage documents, rental or lease payments, utility and telephone bills, mail envelopes, or addressed correspondence.

14.    All diaries, notebooks, notes, and any other records reflecting personal contact and any other activities with minors visually depicted while engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2).

15.    All fruits, instrumentalities, and evidence, in any format or medium, of violations of 18 U.S.C. § 2252A's enumerated offenses.

23

16.     If a smart cell phone or other computer, as described herein, is found that requires access by using a finger or thumbprint or face to unlock the device, then, while executing the search warrant at the **SUBJECT PREMISES**, a law enforcement officer may press the finger or thumbprint of Rogers Leon THOMPSON, Jr. onto the device to try to unlock it or use his face to unlock the device via facial recognition features.

24